The complainant and defendant were partners from 1914 to May, 1922, in conducting a meat shop in Montclair. The store was fitted up by the defendant; the complainant's share of the cost were taken out of his share of the profits of the business. The defendant ran the business, for which he was to receive $25 per week, in addition to half of the profits. The complainant invested nothing, and, apparently, did nothing, except to complain, and take his share of the profits. An accounting was ordered, and the master, to whom it was referred, has filed his report, to which exceptions are taken.
The defendant operated a chain of stores, but the complainant was interested only in the one at Montclair. In 1916 he started a warehouse from which he supplied the stores, including the one at Montclair, and charged the latter with its proportion of the cost of operation. He sold *Page 51 
to the Montclair store at cost, plus a small, uniform charge for shrinkage in weight — the difference between what the meat weighed when received at the warehouse and when delivered at the store.
The complainant sought to surcharge the defendant with the operation cost of the warehouse apportioned to the Montclair store, the charge to cover shrinkage, the sum total of the $25 dollars per week paid the defendant for managing the store, claiming that he did not give it the required attention, a depreciation charge on the fixtures in the store, and interest on money withdrawn by the defendant. All these items of surcharge the master quite properly refused to allow, and in his report gives his reasons, to which little is to be added.
The warehouse system was carried on as an economic measure, in the benefits of which the Montclair store shared proportionately with the other stores of the defendant, and it is but just that the store should stand its share of the cost of operation. The uniform charge for shrinkage was not in excess of the money loss in weight, and it does not appear that the cost price of meat charged to the Montclair store, including the shrinkage or charges, exceeded the market price of day-to-day purchases from the meat houses. In fact, it appears to have been less. By the warehouse system the defendant was able to buy in large quantities at advantageous prices, and take advantage of the market when the prices were off. The Montclair store got the benefit, and also the advantage of choice of selection, and quick and ready service. There was no profit to the defendant in either item.
As to the $25 a week. The Montclair store was in charge of a local manager. The complainant thought the defendant should give it personal and closer attention. I think he gave it all that was understood he was to give. He managed it executively, as he did his other stores. He was to do no more.
The complainant was conversant with the methods employed by the defendant in carrying on his joint store enterprises, and regular periodical statements of the business were *Page 52 
made to him, accompanied by checks for his share of the profits, which, demurringly, he took over a period of years. His complaint now, after this long lapse of time, is too feeble to be heard. The partnership was for an unlimited time, and, if the course of dealings of his partner was objectionable, it was his privilege to terminate the relation. That was his time to act. Having reaped the profits of the system, he cannot be permitted to take advantage of its imperfections, if any there were.
The depreciation and interest items were correctly disposed of by the master.
Exceptions dismissed.